J-S59031-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FRANK ROSCOE | |
| Appellee | No. 751 EDA 2014 |

Appeal from the Order February 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007071-2013

BEFORE:  SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 26, 2014**

I respectfully dissent from the majority's decision. Although admittedly a close case, I agree with the trial court that the facts of this matter are distinguishable from ***Thompson*** and, accordingly, would suppress the evidence seized incident to Roscoe's arrest.

Unlike in ***Thompson***, the Commonwealth here presented no evidence that the corner on which the alleged aborted drug transaction took place was located in a high crime, much less a high drug crime, area.[1]  In addition,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] It bears noting that, in ***Thompson***, the Commonwealth itself framed the issue as providing the Supreme Court "an opportunity to clarify that when an officer who is familiar with drug sales sees what he recognizes as a drug sale, **at a specific drug-selling location**, he has probable cause to arrest

*(Footnote Continued Next Page)*

Officer York did not actually see what was contained in the opaque black plastic bag, but merely "inferred" its contents based upon the "pinching motion" Roscoe made when reaching into the bag.[2]  Indeed, Officer York never witnessed Roscoe actually remove anything from the bag, and no exchange between Roscoe and the other individual ever took place.  Finally, while Officer York noted his experience and training, he did not testify whether the hundreds of narcotics arrests he had made involved hand-to-hand street transactions such as the one at issue here.[3]

In light of the foregoing, and based upon the totality of the evidence, I do not believe that the activities witnessed by Officer York rose to the level of probable cause.  Accordingly, I would affirm the suppression court's order.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

the parties to the transaction."  ***Thompson***, 985 A.2d at 932.  In that case, the area in which the drug sale took place had been designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood and was known by the arresting officer to be an area in which narcotics, especially heroin, were regularly sold.

[2] In ***Thompson***, the police officer specifically testified that he saw the defendant receive a "small object" from another individual in exchange for cash.

[3] The officer in ***Thompson*** testified that he had made "several hundred narcotics arrests of this very type[.]"  ***Thompson***, 985 A.2d at 930.